NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| GLEANDA HICKS,<br><br>        Plaintiff,<br><br>v.<br><br>TARGET CORPORATION, ABC CORP—XYZ CORP., JOHN DOE—RICHARD ROE (a series of fictitious names),<br><br>        Defendants. | Civ. No. 10-3116 (DRD)<br><br>**O P I N I O N** |

*Appearances by:*

ZAVODNICK, PERLMUTTER & BOCCIA, L.L.C.
by: Christopher S. Byrnes, Esq.
26 Journal Square, Suite 1102
Jersey City, New Jersey 07306

   *Attorneys for Plaintiff,*

FISHMAN MCINTYRE, P.C.
by: Cassandra A. Willock, Esq.
120 Eagle Rock Avenue
East Hanover, New Jersey 07936

   *Attorneys for Defendants.*

**DEBEVOISE, Senior District Judge**

   This matter arises out of a slip and fall accident at one of Defendant Target Corporation's ("Target") stores.  On June 28, 2008, Plaintiff Gleanda Hicks slipped and fell in some water at a

Target store. On May 6, 2010, Ms. Hicks filed a Complaint in the Superior Court of New Jersey setting forth a single count of negligence and seeking damages. On June 18, 2010, Target removed the Complaint to this Court pursuant to 28 U.S.C. § 1441. On September 23, 2011, Target filed a Motion for Summary Judgment on Ms. Hicks's claim. For the reasons set forth below, Target's motion is DENIED.

## I. BACKGROUND

On June 28, 2008—a sunny day—at approximately four o'clock in the afternoon, Ms. Hicks went shopping at a Target store in the Newport Section of Jersey City. She entered the store with only her pocketbook. Upon entering the store, Ms. Hicks noticed that the floors seemed shiny, as if they had been recently cleaned or buffed. Photographs submitted by both parties indicate the shiny, almost reflective nature of the floors. Ms. Hicks walked between six and eight feet further into the "Dollar Spot" area of the store before noticing that she had stepped in water. At that point, she lost her balance, fell forward—landing on her left side—slid across the floor, and hit a shelving area. She remained on the ground until an ambulance arrived approximately half an hour later.

While on the ground, Ms. Hicks was approached by a Target employee who had written up an incident report for Ms. Hicks to sign, which she did. In addition, a maintenance employee arrived at the scent to mop up the water. Shortly thereafter, Ms. Hicks telephoned her daughter, Krystal, who came to the store to tend to her.

In September 2010, more than two years after the accident, Krystal became a Target employee selling drinks at a Starbucks located inside the same Target store where her mother fell. The Starbucks is roughly ten or twelve feet away from the entrance of the store, approximately ten feet away from the area of the accident, and side by side to a Pizza Hut and a

food court that also sell drinks. In deposition, when asked if she had any idea how the water that caused her mother's accident appeared, Krystal testified that "[i]t could be someone spilled it." (Def. Cert., Ex. C at 30:2-5.) In doing so, she noted that, in the course of working at Starbucks, she observed a spill that remained "out on the ground for a while." (Id. at 30:5-16.) She further testified that she ended up cleaning the spill herself because she believed that "somebody could come and fall again." (Id.) On that basis, she posits that her mother's accident was caused by a spill that Target employees failed to flag and clean up; however, she admitted to having no actual knowledge of the source of the water that caused her mother's accident.

In its responses to Ms. Hicks's interrogatories, Target stated that "all target employees are trained and instructed to continually be on the lookout for any condition on the premises that needs attention and/or correction." (Def. Cert., Ex. G.) In addition, Krystal testified that, in the course of her employment at Target, she received training regarding how to respond to a spill. Specifically, there are phones around the store that employees may use to call a custodian. Underneath those phones are boxes containing yellow cones that employees may use to mark a spill. Krystal certifies that she observed Target employees failing to follow this procedure. On the day of Ms. Hicks's accident, there were no yellow cones in the area where she slipped and fell. Roughly five minutes prior to the accident, Denise McLain, a Target employee, walked through area and did not observe anything on the floor.

On May 6, 2010, Ms. Hicks filed a Complaint in the Superior Court of New Jersey setting forth a single count of negligence and seeking damages. On June 18, 2010, Target removed the Complaint to this Court pursuant to 28 U.S.C. § 1441.

## II. DISCUSSION

3

Target now moves for Summary Judgment on Ms. Hicks's claims pursuant to Federal Rule of Civil Procedure 56(a). In doing so, it argues that (1) it did not have actual or constructive notice of the water on the floor that would trigger a duty to warn Ms. Hicks; and (2) its mode of operation cannot provide the basis of a negligence claim.[1]

## A.    Standard of Review

Summary judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). For an issue to be genuine, there must be "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party." Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006). For a fact to be material, it must have the ability to "affect the outcome of the suit under governing law." Id. Disputes over irrelevant or unnecessary facts will not preclude granting summary judgment.

The party moving for summary judgment has the burden of showing that no genuine dispute of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). When the moving party does not bear the burden of proof at trial, it may discharge its burden under the summary judgment standard by showing that there is an absence of evidence to support the non-moving party's case. Id. at 325. If the moving party can make such a showing, then the burden shifts to the non-moving party to present evidence that a genuine factual dispute exists and a trial is necessary. Id. at 324. In meeting its burden, the non-moving party must offer specific facts

---

[1] Target also argues that an affidavit completed by Krystal should be disregarded by the Court as a "sham affidavit." Under the sham affidavit doctrine, "a party may not create a material issue of fact to defeat summary judgment by filing an affidavit disputing his or her own sworn testimony without demonstrating a plausible explanation for the conflict." Baer v. Chase, 392 F.3d 609, 624 (3d Cir. 2004). Target fails to show how the Krystal's affidavit contradicts her prior deposition testimony and merely argues that it fails to create an issue of material fact.

that establish a material dispute, not simply create "some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). In deciding whether an issue of material fact exists, the Court must consider all facts and their reasonable inferences in the light most favorable to the non-moving party. See Pa. Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995). The Court's function, however, is not to weigh the evidence and rule on the truth of the matter, but rather to determine whether there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). If there are no issues that require a trial, then judgment as a matter of law is appropriate. Id. at 251-52.

**B.     Ms. Hicks' Negligence Claim**

"The proprietor of premises to which the public is invited for business purposes of the proprietor owes a duty of reasonable care to those who enter the premises upon that invitation to provide a reasonably safe place to do that which is within the scope of the invitation." Brown v. Racquet Club of Bricktown, 95 N.J. 280, 290 (1984) (quotation omitted); see also Znoski v. Shop-Rite Supermarkets, Inc., 122 N.J. Super. 243, 247 (App. Div. 1973) (a businesses has "a legal duty of exercising ordinary care to furnish a reasonably safe place and safe equipment for its patrons consistent with its operation and the scope of its invitation. It is not an insurer for the safety of its patrons.").

The duty to maintain safe premises and protect invitees includes an affirmative obligation to inspect the premises "to discover their actual condition and any latent defects, as well as possible dangerous conditions of which he does not know." Brown, 95 N.J. at 290 (quotations and citation omitted). Accordingly, "[a] proprietor generally is not liable for injuries caused by defects of which he had no actual or implied knowledge or notice, and no reasonable opportunity to discover." Id. at 291.

While a plaintiff must ordinarily show that "the defendant had actual or constructive knowledge of the dangerous condition that caused the accident," courts will "relieve the plaintiff of proof of that element in circumstances in which, as a matter of probability, a dangerous condition is likely to occur as the result of the nature of the business, the property's condition, or a demonstrable pattern of conduct or incidents." Nisivoccia v. Glass Gardens, Inc., 175 N.J. 559, 563 (2003). Under those circumstances, "[t]he plaintiff is entitled to an inference of negligence, shifting the burden of production to the defendant, who may avoid liability if it shows that it did all that a reasonably prudent man would do in the light of the risk of injury [the] operation entailed." Id. at 564-65 (quotation omitted). This is known as the mode-of-operation-rule. Id. at 564.

Here, Ms. Hicks presents no evidence from which a jury could infer that Target had actual or constructive notice of the water on the floor that caused her accident. However, there is sufficient evidence in the record to invoke the mode-of-operation rule. Photographs submitted by both parties show that the floor around the area of the accident is reflective and shiny, which would mask the presence of water or other clear liquid. Thus, as a matter of probability, a dangerous condition is likely to occur as a result of the presence of clear liquid on the floor.

Target argues that the mode-of-operation rule does not apply in this case because cases where that rule has been applied involve "clearly identified 'hazards' . . . that were sold by the respective" parties in those cases, while here, according to Target, Ms. Hicks "cannot identify the source of the water or where it came from." (Def. Br. 16-17.) This argument is unpersuasive. In Wollerman v. Grand Union Stores, Inc, the Supreme Court of New Jersey applied the mode-of-operation rule to a case where the plaintiff slipped and fell on a string bean at a grocery store, despite there being "no proof that defendant knew the bean was on the floor or that the bean was

6

there long enough to permit an inference that defendant knew of it." 47 N.J. 426, 428 (1966). In doing so, the Court noted that "[v]egetable debris carries an obvious risk of injury to a pedestrian" and that "the hazard could have been caused by (1) carelessness in the manner in which the beans were piled and displayed; or (2) carelessness of an employee in handling the beans thereafter; or (3) carelessness of a patron." Id. at 428-29.

Similarly, in Nisivoccia, the Court applied the mode-of-operation rule in a case where a grocery store patron slipped and fell after stepping on a loose grape on the floor near the checkout area, noting that grapes "could have easily fallen out [of their package] when accidentally tipped or upended in a shopping cart anywhere in the store," and finding that it was therefore "foreseeable [] that loose grapes would fall to the ground near the checkout area, creating a dangerous condition for an unsuspecting customer walking in that area." 175 N.J. at 565.

The Court sees no reason to distinguish this case simply because the origin of the water that Ms. Hicks slipped on remains unclear. It is clearly foreseeable that water could end up on the floor of the Target store from a variety of sources, including the concession area of the store, a vessel that a patron brought into the store in the first place, or a mop bucket used by a maintenance employee. See Wollerman, 47 N.J. at 429 ("The customer is hardly in a position to know precisely [the source of] the neglect. Overall the fair probability is that defendant did less than its duty demanded, in one respect or another."). Notwithstanding the many potential sources of spilled water in the store, the lustrous nature of the floor creates a foreseeably dangerous condition for an unsuspecting patron walking on it.

Accordingly, Ms. Hicks is entitled to an inference of negligence, thereby shifting the burden of production to Target to set forth evidence that it did all that a reasonably prudent store

owner would do in light of the risk of injury resulting from the presence of water on its floor. Target presents evidence that (1) Denise McLain, a Target employee, walked by the site of the accident approximately five minutes before Ms. Hicks slipped and fell and did not observe anything on the floor, and (2) that "all target employees are trained and instructed to continually be on the lookout for any condition on the premises that needs attention and/or correction." (Def. Cert., Ex. G.) The circumstances surrounding Ms. Mclain's observation of the area of the accident and Target employees' training to "continually be on the lookout for any condition on the premises that needs attention and/or correction" are questions for a jury.

### III. CONCLUSION

For the foregoing reasons, Target's Motion for Summary Judgment is DENIED.

The Court will enter an order implementing this opinion.

DICKINSON R. DEBEVOISE, U.S.S.D.J.

Dated: December 28, 2011